# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GEORGE WATSON-EL,         )
                                     )
      Petitioner,             )      Civil Action No. 11 C 3172
                                     )      Criminal Action No. 04 CR 131
                                     )
                                     )      Honorable Charles R. Norgle
                                     )
UNITED STATES OF AMERICA,    )
                                     )
      Respondent.          )

## OPINION AND ORDER

Before the Court is Petitioner George Watson-El's ("Watson-El") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Watson-El challenges his sentence for distribution of approximately 10 grams of "crack cocaine," in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(e). For the following reasons, the motion is denied.

## I. BACKGROUND

On April 27, 2004, Watson-El was indicted for selling cocaine base, commonly known as "crack cocaine," to an undercover agent in exchange for three firearms. United States v. Watson-El, 376 F. App'x 605, 606 (7th Cir. 2010). The Court appointed counsel. Imani Chiphe ("Chiphe") represented Watson-El during the course of the proceedings; however, on December 18, 2007, minutes before the scheduled trial, Watson-El moved for substitute counsel. Id. Watson-El claimed that "his appointed lawyer had declined to move for dismissal on the ground of selective prosecution and had not pursued discovery to Watson-El's satisfaction." Id. The Court denied Watson-El's

motion, noting that "it was counsel's job to decide what arguments to make." Id. The Court added that, "at all events, a selective-prosecution challenge to the indictment would have been denied." Id. Next, Chiphe made an oral motion, not supported by any evidence, for violation of Watson-El's rights under the Speedy Trial Act, 18 U.S.C. § 3161. The Court denied the motion for failure to sufficiently allege a violation. Following this ruling, on December 18, 2007, Watson-El elected not to proceed with trial and pleaded guilty to Count Six (distributing a Schedule II controlled substance), and Count Seven (felon in possession of firearms). In doing so, Watson-El reserved for sentencing the right to argue that the controlled substance was not crack and that his prior convictions did not qualify as "violent felonies" for purposes of Count Seven and any related enhancements. Id. at 607.

At sentencing on September 10, 2008, Watson-El once again moved to substitute counsel. The Court denied the motion, finding that it was brought merely to "derail the proceedings." Id. Watson-El also made his own motion to withdraw his guilty plea "on the grounds of innocence and ineffective assistance of counsel," which the Court denied because Watson-El had already admitted to the facts of his crimes under oath when he changed his plea on December 18, 2007. Id. During the sentencing hearing, the Court adopted the Presentence Investigation Report ("PSR"), which concluded that Watson-El sold crack. Watson-El did not object to that conclusion. Id. Ultimately, Watson-El was sentenced to fifteen years imprisonment on Counts Six and Seven[1] with the terms to run concurrently. Id. at 606.

---

[1] Fifteen years was the mandatory minimum under Count Seven because Watson-El was designated as an Armed Career Criminal with three or more prior qualifying felonies. Watson-El, 376 F. App'x at 606.

Watson-El appealed this sentence and was appointed counsel. Watson-El's appointed counsel filed an Anders brief because he was unable to find any nonfrivolous grounds for appeal. Id.; Anders v. State of Cal., 386 U.S. 738, 745 (1967). After considering the Anders brief and Watson-El's own Rule 51(b) response, the Seventh Circuit dismissed his appeal on May 25, 2010. Watson-El, 376 F. App'x at 608.

On May 12, 2011, Watson-El filed the instant § 2255 motion. Watson-El raises two separate issues in his § 2255 motion: (1) ineffective assistance of counsel, and (2) deficiency in Count Six of the Indictment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. This is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Specifically, section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a petitioner is able to successfully assert the aforementioned grounds, "the court shall vacate and set the judgment aside and shall discharge the

3

prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

Post-conviction relief under § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000).

"A § 2255 petition is not a substitute for a direct appeal." United States v. Fleming, 676 F.3d 621, 625 (7th Cir. 2012) (internal quotation marks and citation omitted). A petitioner is barred from raising constitutional issues in a § 2255 motion if those issues could have been challenged and decided on direct appeal unless a petitioner can show both (1) "good cause for failing to raise the issue" and (2) "actual prejudice." Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002).

**B. Ineffective Assistance of Counsel**

Initially, Watson-El claims that he received ineffective assistance of appellate counsel. His brief allegations, however, are undeveloped and unsubstantiated. Therefore, Watson-El's claims of ineffective assistance of appellate counsel are waived and need not be considered. See United States v. Lamzotti, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); United States v. Jones, 208 F. Supp. 2d 929, 934 (N.D. Ill. 2002) (stating that

4

while pro se pleadings are to be liberally construed, courts are not required to construct a litigant's argument for him).

Watson-El advances four main claims of ineffective assistance of trial counsel. First, he argues that Chiphe, his trial counsel, failed to argue that his prior convictions: (1) could not be used to charge him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); and (2) could not be used to charge him as an Armed Career Criminal ("ACC") under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Second, Watson-El argues that Chiphe failed to bring a motion for violation of the Speedy Trial Act, and that Chiphe further failed to inform him that he would be waiving his right to bring such a motion by pleading guilty. Third, Watson-El alleges that Chiphe committed a series of missteps during his plea, which resulted in an involuntary guilty plea and an unknowing waiver of his right to a jury trial. Lastly, Watson-El contends that Chiphe provided ineffective assistance by failing to raise an objection at sentencing that the controlled substance was not crack.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vise versa. United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009).

In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland, 466 U.S. at 694. In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citation omitted)). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" Atkins v. Zenk, 667 F.3d 939, 944-45 (7th Cir. 2012) (alteration in original) (quoting Strickland, 466 U.S. at 689).

### 1. Counsel's Alleged Failure to Argue that Prior Convictions Did Not Qualify for Purposes of Count Seven of the Indictment

In opposition to Count Seven, Watson-El avers that several of his prior convictions should not be considered for purposes of labeling him a "felon in possession of a firearm," 18 U.S.C. § 922(g), and an ACC, 18 U.S.C. § 924(e). "Under § 924(e)(1), a defendant convicted of being a felon in possession of a firearm must be sentenced to a minimum of fifteen years' imprisonment if the defendant has at least three prior convictions for a violent felony . . . . But a 'prior conviction' does not include a conviction for which civil rights have been restored." Gant v. United States, 627 F.3d 677, 682 (7th Cir. 2010). "To exclude a conviction from counting as an ACC predicate . . . . a defendant must show, by a preponderance of the evidence, that his rights were restored." Id. Watson-El claims that, if certain of his prior convictions are precluded

from consideration, Count Seven of the indictment would be eliminated. Based on his assessment of the applicability of his prior convictions, Watson-El claims that Chiphe provided ineffective assistance by failing to raise this argument. In support of this claim, Watson-El alleges that in 1996 and 2002 he received parole discharge letters restoring his civil rights for two of his past felony convictions,[2] thereby negating his status as an ACC, which requires at least three prior felony convictions. Pet.'s Mot. to Cite Supp. Authority 3. Based on these letters, Watson-El alleges that Chiphe should have argued that his prior convictions did not qualify for purposes of Count Seven.

Applying the first prong of the Strickland test, the Court must determine whether Chiphe's failure to raise this argument constitutes "deficient performance." Strickland, 466 U.S. at 687. The Court finds that it does not. Attorneys have a duty to conduct reasonable investigations on behalf of their clients. Id. at 691. "But trial counsel is not obligated to chase down every lead or 'engage in a scavenger hunt for potentially exculpatory information' without direction from a client, and counsel's decision to avoid pursuing investigations that would be fruitless cannot be considered unreasonable." Terrell v. Pfister, 443 F. App'x 188, 193 (7th Cir. 2011) (quoting United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002)). Furthermore, because of a strong presumption in favor of an attorney's strategic decisions, "[a] § 2255 petitioner alleging ineffective assistance of counsel due to counsel's failure to investigate has the 'burden of providing . . . a comprehensive showing as to what the investigation would have produced.'" Carpenter v. United States, 492 F. Supp. 2d 912, 920 (N.D. Ill. 2007) (quoting Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003)). Indeed, "[t]rial tactics are a mater of

---

[2] Watson-EL has not produced the alleged parole discharge letters from 1996 and 2002. Instead, he has attached copies of "similar" letters as exhibits. See Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence, Exs. B, C, D & E.

professional judgment, and . . . [courts] will not play 'Monday [or Tuesday] morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case." United States v. Lathrop, 634 F.3d 931, 937 (7th Cir. 2011) (third alteration in original) (quoting United States v. Malone, 484 F.3d 916, 920 (7th Cir. 2007)).

Chiphe's exploration was thorough and sufficient. The instant motion is the first time on record that Watson-El has claimed that his civil rights have been restored. Notably, Watson-El never raised this issue on direct appeal. Instead, he brings it to light now, couched in an allegation for ineffective assistance of counsel. See Allen v. United States, 175 F.3d 560, 563 (7th Cir. 1999) ("[Courts] are reluctant to allow prisoners to circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel."). At no time has Watson-El stated that Chiphe had knowledge of the alleged discharge letters. On the contrary, Watson-El claims merely that Chiphe should have discovered the existence of the letters on his own. Watson-El never states that he told Chiphe that his civil rights had been restored. Furthermore, Watson-El's status as an ACC remained a major contention of his defense throughout the pendency of his case. According to Watson-El, he asked Chiphe: (1) to investigate his prior convictions to see if any had been or could be expunged; (2) to look into whether any of his past convictions were consolidated; and (3) to obtain transcripts and documents from the plea hearings of several of his former convictions. Pet.'s Mot. to Vacate, Set Aside or Correct Sentence, T-1-3. Watson-El did not, however, raise the issue of discharge letters or suggest that Chiphe look into the restoration of his civil rights. On this record, Watson-El has not

8

established that Chiphe acted unreasonably.[3] See Koons, 639 F.3d at 354 (finding the attorney's performance reasonable where he did not raise a Fourth Amendment claim when the petitioner never told him that the search was not consensual).

Because the Court finds that counsel's performance was not deficient, it need not decide whether such performance prejudiced the defense. In an abundance of caution, however, the Court finds that failure to raise this argument did not prejudice the outcome. Indeed, even if Chiphe had investigated the alleged restoration of civil rights, Watson-El's own inquiries reveal that there is likely nothing to find. In response to Watson-El's Freedom of Information Act Request ("FOIA") for the alleged parole discharge letters, the Illinois Department of Corrections ("IDOC") replied that it "has been unable to locate any such letters." See Pet.'s Mot. to Vacate, Set Aside or Correct Sentence, Ex. A. Without actual copies of the letters, which purportedly restored Watson-El's civil rights, the government suggests that Chiphe would not have been able to prove the contents without having Watson-El testify. Govt.'s Resp. to Def.'s Mot. 11. Whatever strategies Chiphe may have considered, the Court cannot now say that Chiphe's ultimate decision resulted in deficient performance, particularly if Chiphe had no knowledge of the alleged letters. See Koons, 639 F.3d at 354.

Watson-El admits that he does not have possession of the alleged letters and the IDOC was similarly "unable to locate any such letters." Pet.'s Mot. to Vacate, Set Aside or Correct Sentence, Ex. A. The Court has already denied several of Watson-El's discovery motions in the instant action after finding such motions to be without cause and

---

[3] On direct appeal, the Seventh Circuit accepted the assertions of Watson-El's appellate counsel in his Anders brief, stating that "counsel have not found any basis for arguing that the offense level or the criminal-history score are incorrect" for purposes of sentencing. Watson-El, 376 F. App'x at 608.

nothing more than "fishing expeditions." See Minute Order, July 20, 2011; Minute Order, July 19, 2012; Minute Order, October 16, 2012; see also Cooper v. United States, No. 09-162, 2012 WL 996947, at *4 (S.D. Ill. Mar. 23, 2012) (finding that an evidentiary hearing on a § 2255 petition is not required when the allegations do not go beyond "mere unsupported assertions" (quoting Barry v. United States, 528 F.2d 1094, 1101 (7th Cir. 1976)). Therefore, Chiphe's failure to argue that Watson-El's prior convictions do not qualify for purposes of Count Seven did not prejudice the outcome. Accordingly, the Court rejects Watson-El's first claim for ineffective assistance of counsel.

### 2. Counsel's Failure to Bring a Successful Speedy Trial Motion and Otherwise Advise Watson-El Regarding the Effects of a Guilty Plea On Any Potential Speedy Trial Motion

Watson-El next claims that Chiphe provided ineffective assistance of counsel when he made an unsuccessful "last-ditch oral motion" under the Speedy Trial Act. Tr. Dec. 18, 2007, at 23, United States v. Watson-El (No. 04-CR-131). This argument fails because "an unconditional guilty plea waives all non-jurisdictional defects occurring prior to the plea" unless it is preserved for appeal. United States v. Elizalde-Adame, 262 F.3d 637, 639 (7th Cir. 2001); see Fed. R. Crim. P. 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."). There is no dispute that Chiphe did not properly preserve the Speedy Trial Act motion for appeal before Watson-El pleaded guilty.

In determining whether this claim constitutes ineffective assistance of counsel, the Court first looks to whether there was prejudice, or a reasonable probability that the result

10

would have been different.  Strickland, 466 U.S. at 694.  Even if Chiphe's oral motion would have been successful and the indictment dismissed, the Court would not have done so with prejudice.  The Speedy Trial Act provides that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a).  Bartering drugs for guns constitutes a serious offense.  Moreover, the facts and circumstances leading up to Chiphe's motion indicate that Watson-El was trying to delay the proceedings, leading the Court to admonish him for trying to "throw a monkey-wrench into the proceedings."  Govt.'s Resp. to Def.'s Mot. 19; Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 2-B.  Accordingly, any possible dismissal through a successful Speedy Trial Act motion would have been without prejudice—giving the government an opportunity to re-file the indictment.  Based on the overwhelming evidence and the government's assertion that it would have subsequently dropped all plea negotiations, Watson-El likely would have faced an even greater sentence upon re-indictment because the 21 U.S.C. § 851 enhancement would have increased his maximum available sentence to life.  See id. at 17.  Therefore, no prejudice resulted from Chiphe's failed Speedy Trial Act motion.  Accordingly, the Court need not decide whether counsel's performance with regard to this motion was deficient.

Watson-El also argues that Chiphe did not inform him that his guilty plea would waive any future Speedy Trial Act arguments.  This argument is without merit because it is not reasonably likely that Watson-El would have proceeded to trial had he known

11

about the waiver. "To mount a successful claim that counsel was ineffective at the pleading stage, [the petitioner] must first show his attorney performed in a deficient manner, and then prove that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003) (internal quotation marks and citations omitted). In his § 2255 motion, Watson-El unequivocally asserts that he would not have pleaded guilty had he known he would be waiving his right to appeal the denial of his Speedy Trial Act motion. However, such self-serving assertions, without further objective evidence, are insufficient to show prejudice. See Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010); see also Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003) ("[A] self-serving statement is not enough to satisfy the second Strickland prong. Precedent on this question is manifold and clear: the defendant's sole assertion that he would have proceeded to trial cannot carry the burden to show prejudice under Strickland.").

The evidence against Watson-El was vast: selling a controlled substance to an undercover federal agent, possession of three firearms, recordings of the transactions leading to his arrest on February 3, 2004, as well as Watson-El's own confession in an interview shortly after his arrest. See Govt.'s Resp. to Def.'s Mot. Pursuant to 28 U.S.C. § 2255 1. Without the plea deal, which dropped the § 851 enhancement, Watson-El faced the possibility of life in prison as a maximum sentence. Furthermore, Watson-El told the Court several times during his change of plea hearing that it was his intention to plead guilty. He explained his crimes in his own words and repeatedly rejected the Court's offer to proceed with trial. Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 3-I. Even Watson-El's appellate counsel stated that Watson-El did not wish to have his guilty

plea set aside. Watson-El, 376 F. App'x at 607. Watson-El has not established a reasonable probability that he would not have pleaded guilty had Chiphe advised him that, by doing so, he would be waiving his right to appeal the denial of his Speedy Trial Act motion. As no prejudice resulted from Chiphe's alleged failure, the Court need not decide whether it constituted deficient performance. Accordingly, Watson-El's second claim for ineffective assistance of counsel fails for lack of prejudice.

### 3. Counsel's Failure to Advise Watson-El in Connection With His Guilty Plea, Various Jury Trial Rights, and Sentencing

Watson-El makes a multitude of other ineffective assistance of counsel allegations with regard to his guilty plea, jury trial rights, and sentencing. For example, Watson-El alleges that Chiphe failed: (1) to negotiate a conditional plea; (2) to assure he understood all elements of the charged offenses; (3) to provide "accurate information regarding consequences of his guilty plea;" (4) "to assert inoperable firearms claim;" (5) "to accurately describe the government's evidence against him;" and (6) to ensure that he "knowingly, voluntarily, and intelligently waived his right to a jury trial at sentencing." Pet.'s Mot. to Vacate, Set Aside or Correct Sentence 2-A - 3-A. None of the plethora of accusations has been fully developed into an argument for ineffective assistance of counsel. As these bare assertions are unsupported and fail to apply Strickland, the Court agrees with the government that Watson-El has thereby waived these arguments. See Lamzotti, 205 F.3d at 957 (finding that undeveloped arguments are waived); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). To the extent that Watson-El claims that he would not have pleaded guilty but for these issues, the Court reaffirms its finding that prejudice would

13

not have resulted because there is not a reasonable probability that Watson-El would have refrained from pleading guilty.

In addition, Watson-El alleges that the District Court erred in its Rule 11 colloquy: (1) by failing to advise him that he was waiving his right to appeal the denial of his Speedy Trial Act motion, (2) by failing "to outline the nature and essential elements of the charges against [him]," and (3) by abusing its discretion in ruling on his motion to substitute counsel and motion to withdraw as counsel. Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 2-A. Because Watson-El has failed to allege prejudice and good cause for not bringing these claims on direct appeal when he could have done so, the issues are now procedurally defaulted for purposes of collateral review and need not be considered. See Massaro v. United States, 538 U.S. 500, 504 (2003). Consequently, the Court rejects Watson-El's third claim for ineffective assistance of counsel.

### 4. Counsel's Failure to Contest that the Controlled Substance Was "Crack" at Sentencing

Finally, Watson-El alleges that Chiphe failed to contest, at sentencing, that the controlled substance Watson-El traded to the undercover agent was crack. The PSR concluded that the controlled substance was crack, which carries a heavier possible sentence than cocaine. At the sentencing hearing, the government did not object to the PSR. While Watson-El attempted to object through pro se filings, the Court rejected his motions because he was represented by counsel. Chiphe did not object to the PSR, and the Court adopted the PSR and its findings for sentencing purposes. Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 2-F.

Watson-El claims that Chiphe provided ineffective assistance of counsel by failing to "put the government to the burden of proving that the substance was crack." Id.

at 2-E. Watson-El alleges that Chiphe promised to hire a chemist for the defense to contradict the government's lab results, but failed to do so. Id. at 2-G. Watson-El further alleges that his other suggestions for refuting the government's crack conclusion at sentencing were likewise rejected by Chiphe. These suggestions included: (1) having Watson-El testify that the substance was not crack, and (2) having witnesses testify "that Watson-El used cocaine himself, that Watson-El sold cocaine hydrochloride [powder cocaine]" which could be converted into crack, but was not crack. Id. at 2-G – 2-H.

While attorneys have a duty to make reasonable investigations, they likewise have a duty "to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691 (emphasis added). Courts are highly deferential to the conduct of counsel where "the challenged action might be considered sound trial strategy." Koons, 639 F.3d at 351. In this case, the government produced two separate lab reports, wherein the analysts concluded that the controlled substance at issue was crack. See Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 2-G. The government further produced a post-arrest interview with Watson-El where he admitted that the controlled substance was crack. Govt.'s Resp. to Pet.'s Mot. 21. Given this evidence, Chiphe's decision not to object to the determination of the substance in the PSR did not fall "outside the wide range of competent representation." United States v. Jones, 635 F.3d 909, 915 (7th Cir. 2011). In addition, Chiphe's decision not to have Watson-El or others testify that Watson-El sold cocaine, not crack, was strategic and therefore entitled to the Court's deference. See Foster v. Schomig, 223 F.3d 626, 631 (7th Cir. 2000) ("Certainly the decision not to call a witness to testify can be a strategic decision. Such a decision is sound if it is based on the attorney's determination that the testimony the

witnesses would give might on balance harm rather than help the defendant." (internal citations and quotation marks omitted)). In light of the evidence against Watson-El, the Court finds that Chiphe's performance did not fall below the professional standard to constitute a deficient performance.

Further, no prejudice resulted from the decision. On direct appeal, Watson-El challenged this Court's finding that the substance was crack as opposed to powder cocaine. The Seventh Circuit determined that "the drug type was irrelevant because the 15-year, mandatory minimum of the Armed Career Criminal Act determined the floor for imprisonment, and that is the length of time that Watson-El received." Watson-El, 376 F. App'x at 608. Accordingly, the outcome would have been the same regardless of whether Chiphe challenged the government's determination that the substance was crack. Because the Court finds that there was no deficient performance or prejudice as a result of Chiphe's failure to contest the nature of the controlled substance at sentencing, the Court rejects Watson-El's final claim for ineffective assistance of counsel.

## C. Allegation of Deficiency in Count Six of the Indictment

Watson-El claims that Count Six of the indictment was deficient or failed to state an offense because "[n]o controlled substance was named in the indictment as an essential fact of the offense." Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 4-B. Count Six states that Watson-El,

> knowingly and intentionally distributed a controlled substance, namely approximately 10 grams of mixtures containing cocaine base, commonly known as "crack cocaine," a Schedule II Narcotic Drug Controlled Substance; In violation of Title 21, United States Code, Section 841(a)(1).

Indictment at 6, United States v. Watson-El, No. 04 CR 131 (Apr. 27, 2004). Specifically, Watson-El claims that "cocaine base" is not a controlled substance listed in

Schedule II, and therefore, no controlled substance was listed in the indictment. Pet.'s Mot. to Vacate, Set Aside, or Correct Sentence 4-B.

"In the § 2255 situation the indictment cannot be questioned unless it is so defective on its face as not to charge an offense under any reasonable construction." Burchfield v. United States, 544 F.2d 922, 924 (7th Cir. 1976); see also United States v. Cox, 536 F.3d 723, 726 (7th Cir. 2008) (same). The challenge here is whether cocaine base is a controlled substance under Schedule II. "The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V." 21 U.S.C. § 802(6). Schedule II includes, *inter alia*, "cocaine, its salts, optical and geometric isomers . . . or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812, Schedule II(a)(4) (emphasis added). As cocaine base is cocaine without its salts attached, United States v. Betts, 576 F.3d 738, 741 (7th Cir. 2009), it would be considered a "compound or mixture" which contains a quantity of cocaine under Schedule II. Furthermore, the Supreme Court recently held that "Congress used the term 'cocaine base' in [21 U.S.C. § 841(b)(1)(B)(iii)] to penalize more severely not only offenses involving 'crack cocaine,' but those involving substances containing chemically basic cocaine more generally." DePierre v. United States, 131 S. Ct. 2225, 2237 (2011) (emphasis added). Therefore, the Court finds that cocaine base is a Schedule II controlled substance as defined by Congress and as listed in Count Six of Watson-El's indictment. See United States v. Winbush, No. 2:05-CR-76, 2011 WL 6122582, at *9 (N.D. Ind. Dec. 8, 2011) (finding that cocaine base is a controlled substance).

Accordingly, the Court rejects Watson-El's claim that Count Six of the indictment is deficient.

## III. CONCLUSION

For the foregoing reasons, Watson-El's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied. The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 17, 2012